| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | <u>**FOR PUBLICATION**</u> |

------------------------------------------------------------x

In re:                                                                                           Chapter 13

RENEE A. QUINTYNE,                                                    Case No. 15-22441 (SHL)

                       Debtor.

------------------------------------------------------------x

## <u>MEMORANDUM OF DECISION DENYING HARDSHIP DISCHARGE</u>

**A P P E A R A N C E S:**

**LEGAL AID SOCIETY OF ROCKLAND COUNTY, INC.**
*Counsel for the Debtor, Renee A. Quintyne*
2 Congers Road
New City, NY 10956
By:    Derek Sherman Tarson, Esq.

**OFFICE OF THE STANDING CHAPTER 13 TRUSTEE**
399 Knollwood Road
White Plains, NY 10603
By:    Krista M. Preuss, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is the request of Renee A. Quintyne (the "Debtor"), the above-captioned debtor, for a hardship discharge pursuant to Section § 1328(b) of the Bankruptcy Code. *See* Cross-Motion for a Hardship Discharge [ECF No. 32] (the "Debtor's Hardship Motion"). The Chapter 13 Trustee (the "Trustee") opposes the request. *See* Affirmation in Opposition to Motion for Hardship Discharge [ECF No. 35] (the "Trustee's Opposition"). For the reasons set forth herein, the Court denies the Debtor's request for a hardship discharge.

**BACKGROUND**

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on April 2, 2015. *See* Voluntary Chapter 13 Petition [ECF No. 1]. Several months later, on July 14, 2015, the Debtor successfully confirmed a Chapter 13 plan which provided for monthly payments in the amount of $214.94 per month for 60 months. *See* Order Confirming Chapter 13 Plan [ECF No. 21].

Subsequent to confirmation, the Court entered an order on August 24, 2018 granting the Debtor's uncontested *Motion for Authority to Obtain Credit for Debtor to Enter Into a Financing Agreement for a New Automobile* [ECF No. 24] (the "Debtor's Credit Motion"). *See* Order Approving Debtor's Application to Enter into a Financing Agreement for a New Vehicle [ECF No. 26] (the "Credit Order"). That order approved the Debtor's entry into a financing agreement for a new Toyota vehicle after the Debtor's 2006 Toyota Corolla broke down. *Id.* In support of the Debtor's Credit Motion, the Debtor stated that her 2006 Toyota Corolla could not be repaired for less than the value of the vehicle and that the use of alternative transportation options, including public transportation, would cause hardship to the Debtor. *See* Debtor's Credit Motion ¶¶ 4, 6. Under the terms of the approved financing agreement, the new vehicle's purchase price in the amount of $18,460.40 would be financed over a period of 60 months resulting in monthly payments in the amount of $471.95 per month. *See* Credit Order at 1. The new car payments were partially offset by changes in the Debtor's finances, including that the Debtor's two children no longer needed her financial support; all these events ultimately resulted in reduced monthly plan payments in the amount of $94.39 per month. *See* Affidavit of Debtor, Renee A. Quintyne, in Support of Her Motion, Pursuant to FRBP § 4001(c), for an Order Authorizing Financing of a New Motor Vehicle ¶¶ 4–5 [ECF No. 24-2] (the "Debtor's Credit Motion

2

Affidavit"). The Debtor indicated that she intended to "[file] a motion to amend [her] plan post-confirmation as soon as [possible]." *Id.* ¶ 5. The Debtor represented that the amended plan, among other things, "[would] comply with the [B]ankruptcy [C]ode, since [her] one secured debt—the arrears on [her] mortgage—[has] been almost completely paid off by the plan payments made so far." *Id.*

To date, the Debtor has not filed an amended plan but did amend Schedules I and J to account for the new monthly car payments. *See* Amended Schedules I and J [ECF No. 25] (the "Debtor's Credit Motion Schedules") (filed in conjunction with the Debtor's Credit Motion). In connection with the Debtor's Hardship Motion, the Debtor once again filed Amended Schedules I and J. *See* Amended Schedules I and J [ECF No. 31] (the "Debtor's Hardship Motion Schedules"). But the Debtor's most recently amended Schedule J reports a monthly net income of $8.39, considerably less than the $94.39 monthly net income she had reported for her Credit Motion. *See* Schedule J, Debtor's Hardship Motion Schedules.

The trigger for the present dispute is the Debtor's default in plan payments. On June 20, 2019, the Trustee filed a motion seeking entry of an order to dismiss these proceedings on grounds that the Debtor was in "material default" under the terms of the confirmed plan. *See* Motion to Dismiss ¶ 5 [ECF No. 30] (the "Trustee's Motion to Dismiss"). Specifically, the Trustee stated that, as of June 20, 2019, the Debtor was $875.06 in arrears on plan payments.[1] *Id.* ¶ 2. In sum, the Debtor has paid 53 of the 60 total plan payments in the total amount of $11,391.82 as of September 13, 2019. *See* Trustee's Opposition ¶ 2; Reply Declaration of Derek

---

[1]   The Trustee also argues that the Debtor's case should be dismissed for the Debtor's failure to provide the Trustee with 2017 and 2018 federal and state tax returns as required under the terms of the confirmed plan. *See* Trustee's Motion to Dismiss ¶ 3. The Debtor states that her 2018 federal and state tax returns were submitted to the Trustee and that the Debtor has not received any tax refunds in excess of $1,500.00 from any federal or state tax agencies. *See* Debtor's Hardship Motion ¶ 3.

S. Tarson in Further Support of Debtor's Cross-Motion for an Order Granting Her a Hardship Discharge ¶ 9 [ECF No. 37] (the "Debtor's Reply Declaration").

In response to the Trustee's Motion to Dismiss, the Debtor opposed the dismissal of her case and filed this cross-motion seeking a hardship discharge. The Debtor asserts that she is entitled to a hardship discharge pursuant to Section 1328(b) of the Bankruptcy Code because (1) the arrearages stem from the "unexpected loss of the use of [the Debtor's] car and [the Debtor's] need to finance a new car—a circumstance for which [the Debtor] should not . . . be held accountable"; (2) any distributions to unsecured creditors would not be less than what would have been paid on such claims in a Chapter 7 liquidation proceeding; and (3) modification of the Debtor's plan is impracticable as the Debtor's disposable income is less than $10.00. *See* Debtor's Hardship Motion ¶ 5.

Subsequently, the Trustee filed the Trustee's Opposition in support of dismissal and asserted that the Debtor was not entitled to a hardship discharge. *See generally* Trustee's Opposition ¶ 3–7. Specifically, the Trustee argued that the Debtor had not provided a "compelling narrative that the circumstances surrounding her inability to complete the confirmed plan payments were beyond her control." *Id.* ¶ 7. Instead, the Trustee stated that a hardship discharge should only be granted in the "most compelling of circumstances" and highlighted that the Debtor had not made any effort to gain additional income. *Id.* While conceding that creditors would likely not face financial prejudice under either a dismissal or a hardship discharge,[2] the Trustee urged the Court to reject the Debtor's request in order to maintain the "intent and spirit of the 'hardship discharge.'" *Id.* ¶ 3.

---

[2] It appears that the Debtor's sole remaining creditor is Navient Solutions, Inc. ("Navient") on behalf of Educational Credit Management Corporation with a claim in the amount of $8,149.96 for the Debtor's outstanding student loans, which remains non-dischargeable. *See* Proof of Claim No. 4; Debtor's Hardship Motion Affidavit ¶ 4; Trustee's Opposition ¶ 2. To date, the Debtor has paid $986.34 to Navient and intends to pay the balance

4

In her reply to the Trustee, the Debtor argued that the "intervening event" of the Debtor's need to finance a new vehicle satisfies the requirements of the six-factor test set forth in *Bandilli v. Boyajian (In re Bandilli)*, 231 B.R. 836, 840 (B.A.P. 1st Cir. 1999). *See* Debtor's Reply Declaration ¶¶ 9–12. Coupled with the Debtor's showing of a monthly net income of $8.39, the Debtor contends that she is entitled to a hardship discharge. *See* Debtor's Reply Declaration ¶ 14 (asserting that a showing of a decrease in her disposable income was sufficient to satisfy the requirements of Section 1328(b)(3)).

## **DISCUSSION**

A central purpose of the Bankruptcy Code is to offer a pathway for insolvent debtors to navigate their way towards a "fresh start," including a discharge of their financial obligations. *See Harris v. Viegelahn,* 135 S. Ct. 1829, 1835 (2015); *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Generally, a Chapter 13 debtor may receive a discharge upon completion of his or her Chapter 13 plan pursuant to Section 1328(a) of the Bankruptcy Code. *See generally* 11 U.S.C. § 1328(a). Where a debtor fails to complete a Chapter 13 plan successfully, such debtor may nonetheless be entitled to what is commonly referred to as a "hardship discharge" under Section 1328(b). *See generally* 11 U.S.C. § 1328(b). Section 1328(b) of the Bankruptcy Code provides that, subject to certain exclusions, at any time post-confirmation and after notice and a hearing:

> [T]he court may grant a discharge to a debtor that has not completed plan payments under the plan only if:
>
> > (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
> >
> > (2) the value, as of the effective date of the plan, of the property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been

---

following the conclusion of this case. *See* Debtor's Hardship Motion ¶ 4. The Debtor's mortgage arrears to Wells Fargo Bank, N.A. in the amount of $8,243.15 have been paid in full. *Id.*

>paid on such claim if the estate of the debtor has been liquidated under chapter 7 of this title on such date; and
>
>(3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). The debtor carries the burden of proof in satisfying all three elements of Section 1328(b). *See In re Romano*, 548 B.R. 39, 43–44 (Bankr. S.D.N.Y. 2016) ("[A] debtor may receive a hardship discharge only if the debtor proves the three required statutory conditions [of Section 1328(b)] are met."). The requirements of Section 1328(b) are conjunctive, comprised of "three, independent conditions precedent to the granting of a hardship discharge." *In re Schleppi*, 103 B.R. 901, 903 (Bankr. S.D. Ohio 1989); *see In re Cummins*, 266 B.R. 852, 855 (Bankr. N.D. Iowa 2001) (noting that the "three subsections of 1328(b) are to be read in the conjunctive"); *In re Nelson*, 135 B.R. 304, 307 (Bankr. N.D. Ill. 1991) (stating that a debtor must "persuade the court that each of [the] three subsections have been complied with before the court will consider whether the debtor is entitled to [a] hardship discharge"). The failure to satisfy even one could result in a denial. *See e.g., In re Schleppi*, 103 B.R. at 904 (finding that the debtor's failure to satisfy Section 1328(b)(3) was "standing alone, fatal to the motion").

Generally, "[u]nsubstantiated and conclusory statements are insufficient" for a debtor to satisfy its burden of persuasion. *Id.* at 903 (citing *In re Dark*, 87 B.R. 497, 498 (Bankr. N.D. Ohio 1988)). However, even if all three requirements are satisfied, it remains within the discretion of the court to grant or deny a debtor's request for a hardship discharge. *See In re Lizzi*, 2015 WL 1576513, at *3 (Bankr. N.D.N.Y. Apr. 3, 2015) (concluding that the use of the word "may" in Section 1328(b) "indicates [that] the granting of a hardship discharge is within the discretion of the court") (citing *In re Bandilli*, 231 B.R. at 836).

As noted above, the parties are in agreement that the granting of a hardship discharge would not prejudice the Debtor's remaining creditors and thus, do not dispute that the Debtor likely

satisfies the requirements of Section 1328(b)(2). Accordingly, the Court addresses the other two elements of Section 1328(b) in turn below.

**I.    Section 1328(b)(1)**

Section 1328(b)(1) provides that a debtor is entitled to a hardship discharge where a "debtor's failure to complete [plan] payments is due to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1328(b)(1). "Courts are split, however, on the level of severity of factual circumstances that will properly give rise to a hardship discharge." *In re Wilson*, 2016 WL 699553, at *2 (Bankr. S.D.W. Va. Feb. 22, 2016). One group of courts has read Section 1328(b)(1) to require the existence of a catastrophic event that can be linked to a debtor's inability to make plan payments such that mere economic reasons will not suffice to satisfy the requirements of Section 1328(b)(1). *See e.g., In re Schleppi*, 103 B.R. at 903 (stating that "[c]ourts confronted with a request for a hardship discharge typically have limited its application to catastrophic circumstances"); *In re Nelson*, 135 B.R. at 307 (stating that "[m]ost courts faced with a request for a hardship discharge have required the presence of catastrophic circumstances") (citations omitted). Rather, such courts have granted a hardship discharge where death or permanent disability would prevent a debtor from earning income, rising to the level of "catastrophic" that would warrant a hardship discharge under Section 1328(b)(1). *See e.g., In re Lizzi*, 2015 WL 1576513, at *5 (granting a hardship discharge to a deceased debtor who died after making 50 out of the 60 required plan payments); *In re Graham*, 63 B.R. 95, 96 (Bankr. E.D. Pa. 1986) (holding that the death of the Chapter 13 debtor warranted a hardship discharge). *But see e.g., In re Cummins*, 266 B.R. at 856–57 (denying a hardship discharge, in part, because a co-debtor's physical impairments were only temporary); *In re Nelson*, 135 B.R. at 307 (finding that the debtor's loss of vehicle and inability to acquire full-time employment

7

coupled with a sizeable unexpected expense in the amount of $1,118 all constituted economic events insufficient to warrant a hardship discharge).

In contrast, a second group of courts has adopted a "necessarily fact-driven" approach to the analysis "with [an] emphasis properly focused on the nature and quality of the intervening event or events upon which the debtor relies." *In re Bandilli*, 231 B.R. at 840; *see also In re Grice*, 319 B.R. 141, 146 (Bankr. E.D. Mich. 2004) (finding that the statute "does not require death, catastrophe, or maximum misery or suffering . . . [but] [i]nstead . . . focuses on accountability"); *In re Dior*, 2017 WL 1379351, at *2 (Bankr. S.D. Ind. Apr. 14, 2017) (indicating that "[t]here is no express requirement in § 1328(b) that a debtor prove catastrophic circumstances and the word 'accountable' does not equate to 'catastrophic'"). In evaluating a debtor's accountability, the *Bandilli* court held that a court's hardship analysis should include the following considerations:

> (a) [W]hether the debtor has presented substantial evidence that he or she had the ability and intention to perform under the plan at the time of confirmation;
>
> (b) whether the debtor did materially perform under the plan from the date of confirmation until the date of the intervening event or events;
>
> (c) whether the intervening event or events were reasonably foreseeable at the time of confirmation of the Chapter 13 plan;
>
> (d) whether the intervening event or events are expected to continue in the reasonably foreseeable future;
>
> (e) whether the debtor had control, direct or indirect, of the intervening events or events; and
>
> (f) whether the intervening event or events constituted a sufficient and proximate cause for the failure to make the required payments.

*In re Bandilli*, 231 B.R. at 840. Even though it did not require a catastrophic circumstance to satisfy Section 1328(b), the *Bandilli* court was nonetheless "mindful that a request for [a] discharge under § 1328(b) merits special vigilance" and cautioned that a court facing such a

8

request should "treat [it] as a matter of some gravity." *Id.* at 840 (cautioning that the "granting [of] unjustified requests [could] likely discourage . . . debtors to meet their plan obligations"); *see also In re Easley*, 240 B.R. 563, 565 (Bankr. W.D. Mo. 1999) (noting that even courts who reject a catastrophic circumstances requirement "agree that a request for a hardship discharge is to be treated with some gravity and that the loss of employment alone is insufficient").

Other courts within this second group have considered the extent of a debtor's accountability and degree of control; the substantiality and foreseeability of the changed circumstances at the time of confirmation; and whether the debtor had made significant efforts to overcome the circumstances but ultimately remained unable to successfully complete his or her plan. *See e.g., In re Dior*, 2017 WL 1379351, at *2 (looking to whether the changed economic circumstances were "beyond the debtor's control that did not exist nor were foreseeable at the time of confirmation of the plan, and [whether] the debtor [had] made serious efforts to overcome . . . but [was still] unable to complete . . . plan payments"); *In re Wilson*, 2016 WL 699553, at *2–3 (considering the accountability of the debtor, the substantiality and foreseeability of the change in circumstances, and whether the debtor still remained unable to make plan payments despite efforts to overcome the circumstances) (citing *In re Bacon*, 2003 WL 26098322, at *2 (Bankr. S.D. Ga. Aug. 20, 2003)).

There is no binding authority in this Court on the proper standard for Section 1328(b)(1). But this Court finds the approach and rationale of the second group of courts to be far more consistent with the language of the statute. Applying this accountability standard to the record currently before the Court, the Court concludes that the Debtor does not satisfy the requirements of Section 1328(b)(1). The Debtor relies upon the breakdown of her 2006 Toyota Corolla—and her need to finance a new vehicle—as the basis for her request for a hardship discharge. *See*

9

Debtor's Reply Declaration ¶ 10 (stating that the intervening event is the Debtor's need to finance a new vehicle). But as a threshold matter, these facts cannot provide a basis for a hardship discharge because they are not unforeseeable. Rather, these facts were known in 2018 when the Debtor sought—and was granted—approval to obtain credit to finance a new vehicle.

In addition, these facts do not provide a basis for a hardship discharge because they are not the true cause of the Debtor's failure to make plan payments. This is clear from the Debtor's own statements. As part of her earlier request for financing, the Debtor represented that she would still be able to make reduced plan payments of $94.39 per month if the Debtor's Credit Motion was granted. Her proposed revised monthly plan payment at that time accounted for her new vehicle and other changes to her finances. But a comparison of the Debtor's Credit Motion Schedules and the Debtor's Hardship Motion Schedules confirms that the decrease in her monthly net income is not the result of the financing of a new vehicle. The Debtor's income in the amount of $5,206.26 and car payments in the amount of $471.95 have remained the same since the filing of the Debtor's Credit Motion. *Compare* Schedule J, Debtor's Credit Motion Schedules *with* Schedule J, Debtor's Hardship Motion Schedules. Rather, it is the Debtor's other expenses that have changed, including a $50.00 increase in clothing, laundry, and dry cleaning expenses; a $100.00 increase in transportation expenses (which excludes car payments); a $60.00 increase in entertainment and periodicals and literary expenses; a $50.00 increase in charitable contributions and religious donations; and a $100.00 increase in "other" expenses relating to "[d]og care." *See* Schedule J, Debtor's Hardship Motion Schedules.

Neither the Debtor's Credit Motion nor the Debtor's Reply Declaration provide any information about these additional expenses or why the Debtor stopped making plan payments altogether; they offer nothing more than a general statement that the Debtor could no longer

10

make her payments. *See* Affidavit of Renee Quintyne in Support of Her Motion for a Hardship Discharge Pursuant to 11 U.S.C. § 1328(b) ¶ 3 [ECF No. 32-2] ("Debtor's Hardship Motion Affidavit") (stating only that the Debtor "was able to continue making [her] bankruptcy plan payments for a little while longer by cutting [her] expenses . . . but, eventually . . . found that [her] disposable income [had] decreased to the point where [she] could no longer [do so]."). Such a sparse and conclusory statement is not enough to satisfy the requirements for a hardship discharge, which requires a factual inquiry of "some gravity." *In re Bandilli*, 231 B.R. at 840; *see also id.* at 840–41 (identifying multiple considerations in "necessarily fact-driven" analysis of request for hardship discharge); *Schleppi*, 103 B.R. at 903 (stating that "unsubstantiated and conclusory statements" are generally insufficient for a debtor to meet its burden of persuasion); *In re Dior*, 2017 WL 1379351, at *2 (examining whether there were factual economic circumstances that were beyond the debtor's control and whether the debtor had made efforts to overcome them).

## II.     Section 1328(b)(3)

The Court's finding that the Debtor fails to meet the requirements of Section 1328(b)(1) is a sufficient basis to deny a hardship discharge and obviates the need for the Court to make a ruling as to whether the Debtor also satisfies the requirements of Section 1328(b)(3). *See e.g., In re Bandilli*, 231 B.R. at 839 (noting that the Debtors' failure to satisfy a single element of Section 1328(b) is "sufficient to support the denial of the hardship discharge"); *In re Cummins*, 266 B.R. at 857 (holding that the Court need not address the second and third prongs of Section 1328(b) following a finding that debtors failed to satisfy their burden of establishing the first prong); *In re Schleppi*, 103 B.R. at 904 (stating that the debtor's failure to meet the third prong of Section 1328(b) was alone "fatal" to the motion). But the Court has similar concerns regarding

11

the Debtor's ability to satisfy the requirements of Section 1328(b)(3) due to the Debtor's failure to explain the relevant changes in her economic circumstances.  Section 1328(b)(3) of the Bankruptcy Code generally requires a debtor to make a sufficient showing that "modification of the plan under [S]ection 1329 . . . is not practicable."  11 U.S.C. § 1328(b)(3).  But the Debtor did not offer any meaningful information about how her additional expenses—none of which relate to her car—prevent her from satisfying the requirements of Section 1328(b)(3).[3]  *See* Debtor's Hardship Motion ¶ 5 (stating only that modification is impracticable because the Debtor has less than $10.00 in disposable income); Debtor's Reply Declaration ¶¶ 13–14 (arguing only that the Debtor's representation of a decrease in her disposable income to $8.39 per month, without anything further, was sufficient to satisfy the requirements of Section 1328(b)(3)).

## CONCLUSION

For the reasons set forth above, the Court denies the Debtor's Hardship Motion.  The Trustee should settle an order on seven days' notice.  The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice.  A copy of the notice and proposed order shall also be served upon counsel to the Debtor.

Dated: New York, New York
       January 16, 2020

                                        */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE

---

[3]  The Court defers ruling on the Trustee's Motion to Dismiss so as to provide the Debtor with an opportunity to assess her options going forward.  The Debtor and the Trustee shall confer about the case and notify the Court within 21 days of the entry of this decision if there is a need to schedule a hearing on the Trustee's Motion to Dismiss.